# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THOMAS P. HUBERT** | **CIVIL ACTION** |
| **VERSUS** | **No. 18-7669** |
| **JOANNE CURREN, ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court is plaintiff Thomas Hubert's ("Hubert") application[1] for attorneys' fees. In the Court's order[2] remanding this case to state court pursuant to 28 U.S.C. § 1447(c), the Court also ordered the payment of attorneys' fees. Hubert now requests $5,892.50, to which defendant Joanne Curren ("Curren") objects.[3] For the following reasons, Hubert's request is granted in part and denied in part.

### I.

On August 14, 2014, the day before a state court trial was scheduled on the issue of damages, Curren removed this case to this Court.[4] Shortly thereafter, Curren filed a motion for judgment on the pleadings and Hubert filed a motion to remand.[5] On September 5, 2018, the Court granted Hubert's motion and remanded the case to state court. It simultaneously awarded Hubert attorneys' fees pursuant to 28 U.S.C. § 1447(c), having determined that there was no objectively reasonable basis for

---

[1] R. Doc. No. 16.
[2] R. Doc. No. 14.
[3] R. Doc. No. 19.
[4] R. Doc. No. 1. The issue of liability had already been decided.
[5] R. Doc. No. 5; R. Doc. No. 7.

Curren's removal.[6] The only remaining issue is the amount of attorneys' fees to be awarded.

## II.

If a court determines that remand is proper, "[the] order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "[Section] 1447(c) gives a court discretion to determine what amount of costs and fees, if any, to award the plaintiff," although "Congress has plainly limited such an award to those costs and fees 'incurred as a result of removal.'" *Avitts v. Amoco Prod. Co.*, 111 F.3d 30, 32 (5th Cir. 1997) (quoting 28 U.S.C. § 1447(c)). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

When determining an award of attorneys' fees under § 1447(c), courts apply the lodestar method. *Halliburton Latin Am. SA v. Int'l Tech. Sols. Inc.*, 2001 WL 1013047, at *1 (5th Cir. 2001) (per curiam). The lodestar method entails a two-step process. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995) "Initially, the district court must determine the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating lawyers." *Id.* at 324 (citing *Hensley*, 461 U.S. at 433). "Then, the district court must

---

[6] To determine whether attorneys' fees should be awarded pursuant to 28 U.S.C. § 1447(c), courts in this circuit ask "whether the defendant had objectively reasonable grounds to believe the removal was legally proper." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 293 (5th Cir. 2000).

multiply the reasonable hours by the reasonable hourly rates." *Id.* The resulting product is the lodestar. *Id.*

After calculating the lodestar, the second step permits the district court to adjust the amount upward or downward based on "the relative weights of the twelve factors set forth in *Johnson* [*v. Georgia Highway Express, Inc.*]." *Saizan v. Delta Concrete Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006). The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Black v. SettlePou, P.C.*, 732 F.3d 492, 502 n.7 (5th Cir. 2013) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), *abrogated on other grounds*, 489 U.S. 87 (1989)).[7] Among the factors, "the court should give special heed to the time and labor involved, the customary fee, the amount involved and result obtained, and the experience, reputation and ability of counsel." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). "The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took

---

[7] However, the United States Supreme Court has prohibited consideration of the sixth factor for enhancement purposes, and the Fifth Circuit has noted that several of the factors, for example the second, third, seventh, eighth, and ninth factors, are typically subsumed in the initial calculation of the lodestar. *See Walker v. United States Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 771–72 (5th Cir. 1996) (citing *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992)).

3

that factor into account; to do so would be impermissible double counting." *Saizan*, 448 F.3d at 800. "The lodestar . . . is presumptively reasonable and should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

As an initial matter, Curren objects to all fees assessed for work performed by summer associates because they are not lawyers. However, she cites no case law to support her objection, and the Fifth Circuit permits parties to recover fees billed for work completed by non-lawyers. *See League of United Latin Am. Citizens No. 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1234–35 (5th Cir. 1997); *see also Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989) ("Clearly, a 'reasonable attorney's fee' cannot have been meant to compensate only work performed personally by members of the bar."). Hubert may recover the expenses incurred as a result of the summer associates' work on this case.

## III.

Hubert's request for attorneys' fees is broken down as follows:

| Attorney or summer associate | Hours worked | Hourly rate |
|---|---|---|
| Larry Centola, III (attorney) | 5.60 | $400 |
| Christopher Carbine (attorney) | 16.8 | $175 |
| Eli Sterbcow (summer associate) | 5.00 | $95 |
| James Kohnke (summer associate) | 2.50 | $95 |

## *Reasonable Number of Hours Worked*

"As noted, the first step in determining reasonable attorneys' fees is an evaluation of the number of hours reasonably expended." *Louisiana Power & Light Co.*, 50 F.3d at 324. "The party seeking attorneys' fees must present adequately documented time records to the court." *Watkins*, 7 F.3d at 457. Additionally, the fee applicant "[has] the burden of showing the reasonableness of the hours billed and that the attorneys exercised billing judgment." *Black*, 732 F.3d at 502. The Court uses the records provided as a "benchmark," but it must "exclude all time that is excessive, duplicative, or inadequately documented." *Watkins*, 7 F.3d at 457.

Hubert submitted contemporaneous billing records for the time spent on this case.[8] Hubert's lead attorney, Lawrence J. Centola, III ("Centola"), also attested in an affidavit that he reviewed the time entries for vagueness and relevance and "spent significant time ensuring that duplicative and excessive time were [sic] not included in [Hubert's] request."[9] However, the Court finds several entries problematic.

The first three entries record associate Christopher Carbine's ("Carbine") preparation for trial, which was set for August 14 in state court:

---

[8] *See generally* R. Doc. No. 16-1. In his affidavit, lead counsel Lawrence J. Centola, III states that time was recorded daily. R. Doc. No. 16-3, at 4.

[9] R. Doc. No. 16-3, at 5. The Court cautions counsel that only submitting the edited billing records is generally not enough to fully demonstrate billing judgment. "Billing judgment requires documentation of the hours charged *and of the hours written off* as unproductive, excessive, or redundant." *Saizan*, 448 F.3d at 799 (emphasis added); *see also Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990), *vacated in part on reh'g on other grounds*, 903 F.2d 352 (5th Cir. 1990) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off.").

5

- On August 11, Carbine spent 3 hours reviewing evidence and drafting a direct examination outline.
- On August 12, Carbine spent 1.25 hours attending a meeting with the client.
- On August 13, Carbine spent 7.5 hours on miscellaneous trial preparation tasks, including editing the direct examination outline, meeting with the client again, and assembling bench books.[10]

Pursuant to § 1447(c), Hubert may recover attorneys' fees he incurred as a result of Curren's removal. However, Hubert argues that, once the trial date is reset in state court, his counsel will have to prepare again and the 11.75 documented hours mentioned above "will have been wasted."[11] "[O]rdinary litigation expenses that would have been incurred had the action remained in state court are not recoverable because such expenses are not incurred 'as a result of the removal.'" *Avitts*, 111 F.3d at 32 (quoting 28 U.S.C. § 1447(c)). Time spent on trial preparation falls outside the scope of recoverable attorneys' fees under § 1447(c) and will be disallowed. *See McCann v. PPG Indus., Inc.*, 448 F. App'x 421, 423 (5th Cir. 2011) (per curiam) ("Although the removal deprived the [party] of the benefit of the pre-removal trial preparation, it is impossible that the expense of that preparation was *incurred* as a result of the removal.").

The remainder of the billing entries are recoverable. They reflect time spent on either the motion to remand or Curren's motion for judgment on the pleadings, a motion that could not have been filed in state court and had to be addressed in the federal litigation. The foregoing reduction results in the following total hours worked:

---

[10] R. Doc. No. 16-1, at 2.
[11] R. Doc. No. 16, at 2; *see also* R. Doc. No. 22, at 2.

| Attorney or summer associate | Hours worked |
|---|---|
| Larry Centola, III | 5.55[12] |
| Christopher Carbine | 5.00[13] |
| Eli Sterbcow | 5.00[14] |
| James Kohnke | 2.50[15] |

### *Reasonable Hourly Rates*

The second step is to determine a reasonable hourly rate for each attorney. "'[R]easonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's

---

[12] In the invoice attached to Hubert's request, it appears he was billed for 5.6 hours of Centola's time. However, the Court relies instead on the detailed billing entries to calculate each attorneys' time. On August 13, 2018, Centola spent 0.75 hours researching removal. R. Doc. No. 16-1, at 2. On August 16, he spent 0.25 hours reviewing Curren's motion for judgment on the pleadings. *Id.* On August 20, he spent 2.1 hours drafting the motion to remand. *Id.* On August 21, he spent 0.75 hours editing the accompanying memorandum. *Id.* On August 29, he reviewed Curren's opposition to the motion to remand, and on August 30, he reviewed Curren's reply. *Id.* When all of Centola's entries are added together, they result in a sum of 5.55 hours.

[13] Carbine worked a total of 5 hours on this case after it was removed. On August 20, he spent 2.5 hours working on the memorandum in support of the motion to remand. *Id.* On August 21, he spent an additional 2 hours editing the memorandum. *Id.* Finally, on August 28, he spent 0.5 hours reviewing Hubert's opposition to the motion for judgment on the pleadings. *Id.*

[14] On August 17, Eli Sterbcow spent 5 hours conducting research related to the motion to remand and the motion for judgment on the pleadings. *Id.*

[15] On August 21, James Kohnke spent 2.5 hours conducting research related to the motion for judgment on the pleadings. *Id.*

7

own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill." *Blum*, 465 U.S. at 895 n.11. "An attorney's requested hourly rate is prima facie reasonable when she requests that the lodestar be computed at her 'customary billing rate,' the rate is within the range of prevailing market rates and the rate is not contested." *White v. Imperial Adjustment Corp.*, No. 99-3804, 2005 WL 1578810, at *5 (E.D. La. June 28, 2005) (Engelhardt, J.) (citing *Louisiana Power & Light Co.*, 50 F.3d at 328).

Hubert submitted an affidavit from Centola attesting that the requested rates "were based on reasonable and customary rates."[16] The requested hourly rates are $400 for Centola, $175 for Carbine, and $95 for both Eli Sterbcow ("Sterbcow") and James Kohnke ("Kohnke") (Sterbcow and Kohnke collectively, the "summer associates").[17] Hubert also submitted a declaration from an attorney outside his counsel's firm stating that, based on his experience in this market, the foregoing billing rates are reasonable.[18]

The Court will consider the reasonableness of the rates requested for each attorney and the summer associates in turn:

> *1. Larry Centola, III.* Hubert seeks attorneys' fees for hours billed by Centola at an hourly rate of $400. Centola is a principal shareholder at counsel's law firm, Martzell, Bickford, & Centola, APC, with 17 years of

---

[16] R. Doc. No. 16-3, at 4.
[17] *Id.*
[18] R. Doc. No. 16-2, at 2. The attorney, Scott Sternberg, is a "principal of the law firm of Sternberg, Naccari & White, LLC in New Orleans" who attests that he is "a practicing lawyer in this market . . . familiar with the market information as to billing rates charged and awarded to lawyers practicing in this circuit, particularly those rates in the Greater New Orleans areas." *Id.* at 1.

8

experience.[19] Curren nonetheless asserts that Centola's hourly rate should be reduced to $300 because "[t]his case was not a difficult case once the liability issue was decided."[20] Other than another attorney's conclusory affidavit, Hubert has not provided any evidence demonstrating that $400 is a typical, prevailing hourly rate for someone with Centola's level of experience in this market.[21]

Based on a review of the case law, the Court finds that the prevailing rate in this market for an attorney with Centola's level of experience is typically less than $400. *See*, *e.g.*, *Sanchez v. Pizzati Enters., Inc.*, No. 17-9116, 2018 WL 3954866, at *4 (E.D. La. Aug. 16, 2018) (Brown, C.J.) (finding $325 to be a reasonable hourly rate for an attorney with 15 years of labor and employment experience); *M C Bank & Trust Co. v. Suard Barge Serv., Inc.*, No. 16-14311, 2017 WL 6344021, at *2 (E.D. La. Dec. 12, 2017) (Vance, J.) (finding that $350 was a reasonable hourly rate for an attorney with over 17 years of experience, with particular expertise in the area of mortgaged vessels); *Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*, No. 15-1533, 2017 WL 4682297, at *2 (E.D. La. Oct. 18, 2017) (Roby, M.J.) (finding $225 to be a reasonable hourly rate for a managing partner with 35 years of construction law experience); *Curry v. Lou Rippner, Inc.*, No. 14-1908, 2016 WL 236053, at *6 (E.D. La. Jan. 20, 2016) (Brown, J.) (finding that $210 was a reasonable hourly rate for a founding partner with more than 15 years of experience); *Norris v. Causey*, No. 14-1598, 2016 WL 1046101, at *9 (E.D. La. Mar. 16, 2016) (Barbier, J.) (finding that $250 was a reasonable hourly rate for an attorney with 31 years of experience); *Alfasigma USA, Inc.*, 2018 WL 3869496, at *4 (finding that $325 per hour was a reasonable rate for an attorney with 23 years of specialized experience in products liability litigation). Considering Hubert's lack of evidence with respect to Centola's requested rate as compared to market rates for similar attorneys in similar cases and the relevant case law, Centola's hourly rate is reduced to $300.

*2. Christopher Carbine.* Hubert seeks attorneys' fees for hours billed by Carbine at an hourly rate of $175. The reasonableness of Carbine's rate

---

[19] R. Doc. No. 16-3, at 1.
[20] R. Doc. No. 19, at 2.
[21] *See Alfasigma USA, Inc. v. EBM Med., LLC*, No. 17-7753, 2018 WL 3869496, at *3 (E.D. La. Aug. 15, 2018) (Roby, M.J.) ("[M]ere testimony that a given fee is reasonable is not satisfactory evidence of market rates. . . . Having considered the affidavit submitted by the mover, the Court finds that it is not adequate because it does not speak to the rates actually billed and paid in similar lawsuits.") (citing *Hensley*, 461 U.S. at 439 n.15).

depends in part on how many years of experience he has. *Compare, e.g.*, *Carrier v. Weber Prop. Grp., L.L.C.*, No. 16-6648, 2017 WL 4232535, at *4 (E.D. La. June 14, 2017) (Wilkinson, M.J.) ($150 for an associate with 4 years of experience) *with Warder v. Shaw Group, Inc.*, No. 09-4191, 2016 WL 3447950, at *3 (E.D. La. June 23, 2016) (Knowles, M.J.) ($300.09 for an associate with 20 years of experience). Hubert's brief is silent on Carbine's credentials and level of experience. Centola's affidavit states only that Carbine is an associate who "handles personal injury claims and trial preparation."[22]

Centola has attested, however, that the requested rates are customary, Curren does not dispute Carbine's requested rate, and $175 is within the range of prevailing market rates for an associate. *See Herbert v. Audubon Comm'n*, No. 15-5425, 2017 WL 5900978, at *2 (E.D. La. Nov. 30, 2017) (Lemelle, J.) (determining that hourly rates of $100 for a first-year associate and $125 for a third-year associate were appropriate); *Calix v. Ashton Marine LLC*, No. 14-2430, 2016 WL 4194119, at *6 (E.D. La. July 15, 2016) (Wilkinson, M.J.) (noting that $180 was a reasonable hourly rate for a first-year associate); *Lewis v. M/V BALTIC PANTHER*, No. 12-2207, 2015 WL 94689, at *3 (E.D. La. Jan. 6, 2015) (Lemmon, J.) (approving an hourly rate of $190 for an associate and explaining that, in 2009, the Court approved hourly rates between $125 and $175 for associates); *Johnson v. Big Lots Stores, Inc.*, 639 F. Supp. 2d 696, 701 (E.D. La. June 25, 2009) (Vance, J.) (finding $225 to be a reasonable hourly rate for associates). The rate is therefore *prima facie* reasonable.

*3. The summer associates.* Finally, Hubert seeks attorneys' fees for hours billed by the summer associates at an hourly rate of $95. As explained herein, Curren objects to the recovery of fees associated with their work altogether, but the Court has already determined that Hubert can recover those expenses. Curren has not argued, alternatively, that the requested rates are unreasonable. On the other side, Hubert has presented the Court with nothing to suggest that $95 per hour for the work of law students is typical for this market, and the case law suggests otherwise. *See Tango Transport, L.L.C. v. Transport Int'l Pool, Inc.*, No. 08-0559, 2011 WL 1304870, at *5 (W.D. La. Mar. 15, 2011) (Hayes, J.) (finding that an hourly rate of $75 is reasonable for a summer associate); *Cater v. Fidelity Nat'l Ins. Co.*, No. 07-4619, 2009 WL 35342, at *1 (E.D. La. Jan. 6, 2009) (Roby, M.J.) (finding that an hourly rate of $85 is reasonable for a summer law clerk); *VFS US, L.L.C.*, 2014 WL 3893309, at *3 (holding that an hourly rate of $85 is reasonable for a summer

---

[22] R. Doc. No. 16-3, at 3.

10

associate); *Bode*, 2018 WL 4701541, at *6 (finding that an hourly rate of $75 is reasonable for a summer law clerk) *see also Chalos & Co., P.C. v. Marine Managers, Ltd.*, No. 14-2441, 2016 WL 9414335, at *3 (E.D. La. Apr. 5, 2016) (Vance, J.) (holding that the requested rate of $125 per hour for a law clerk was excessive and reducing his hourly rate to $75). Thus, the Court reduces the rate to $85 per hour.

After applying the foregoing reductions, the total lodestar in this case is $3,177.50: $1,665 for Centola ($300 per hour × 5.55 hours), $875 for Carbine ($175 per hour × 5 hours), $425 for Sterbcow ($85 per hour × 5 hours), and $212.50 ($85 per hour × 2.5 hours) for Kohnke.

**IV.**

The Court must now determine whether the lodestar should be adjusted based on consideration of the *Johnson* factors. After disregarding the factors that are inapplicable to this case, subsumed in the lodestar's calculation, or prohibited from consideration, and noting that neither party has requested an adjustment, the Court finds that no other factors weigh in favor of adjusting the lodestar upward or downward; this is not an "exceptional" case. *Watkins*, 7 F.3d at 457. Considering the lodestar's presumptive reasonableness, and after a review of the record and the applicable *Johnson* factors, the Court concludes that the lodestar is reasonable, and it finds that no further adjustment is necessary.

11

Accordingly,

**IT IS ORDERED** that Thomas Hubert shall be awarded attorneys' fees in the amount of $3,177.50, such award to be payable on or before **OCTOBER 29, 2018.**

New Orleans, Louisiana, October 15, 2018.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**